## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| RYAN KAISER, on behalf of himself and others similarly-situated, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § § | CIVIL ACTION NO. 4:18-cv-00341-ALM |
| REVIVAL HOME HEALTHCARE SERVICES, INC. and SYLVESTER C. UDEZE, | § § § § | |
| *Defendants.* | § § | |

## SECOND STAGE MOTION FOR FINAL CERTIFICATION

Plaintiff, Ryan Kaiser, on behalf of himself and all others similarly situated, presents this Second Stage Motion for Final Certification and shows the Court as follows:

### I.     OVERVIEW & FACTUAL BACKGROUND

This Motion is brought by Plaintiff Ryan Kaiser on behalf of himself and all opt-in plaintiffs, who were employed by Defendants as home health aides. Pursuant to Defendants' policies and practices, these workers were each (1) compensated on an hourly basis for on-the-clock hours worked, (2) required to work in excess of 40 hours in certain workweeks between September 1, 2015, and the present, and (3) not paid overtime premiums for on-the-clock overtime hours worked.[1] These policies and practices applied to all home health aides employed by Defendants. These similarly situated employees of Defendants worked overtime but did not receive overtime compensation for their overtime work.

---

[1] As discussed more fully below, Defendants have not produced all relevant payroll records, so Plaintiffs are unable to verify that all opt-in plaintiffs worked overtime hours during the relevant period.

This is not a Rule 23 Motion for class certification. It is a motion brought pursuant to the collective action provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). In stark contrast to Rule 23 class action cases, ***collective*** action cases are ***opt-in—not opt-out***. Thus, the standards applicable to obtain collective action notice are drastically more lenient than those applicable to Rule 23 class actions.

Defendants have admitted that "between September 1, 2015, and the present, they "employed at least 20 home health aides," multiple home health aides "worked in excess of 40 hours in certain workweeks," and Defendants compensated those home health aides "at their regular hourly rate" for overtime hours worked. *See* Deemed Admissions attached as **Exhibit A** at Requests 7-11. Defendants' admissions also confirm that Plaintiff Ryan Kaiser worked for the Defendants as a home health aide between February 2016 and November 2017, worked overtime hours, and was not paid an overtime premium "for any hours worked." *Id.* at Requests 1-5. During the same period, "Defendants compensated home health aides at their regular hourly rate regardless of how many hours they worked" and did not pay overtime premiums for any overtime hours worked. *Id.* at Requests 12-14. Defendants' admissions further establish "that Defendants were aware of the requirement to pay overtime to home health aides at a rate of at least 1.5 times their regular hourly rate as of January 1, 2015." *Id.* at Request 20.

The limited relevant documents Defendants have produced to-date also confirm that Defendants did not pay overtime premiums to their home health aides, including the opt-in plaintiffs. Defendants employed home health aides as hourly employees. *See* Employment Agreement attached as **Exhibit B**. And Defendants informed all home health aides that "REVIVAL HOME HEALTHCARE SERVICES, INC does not pay overtime." *Id.* Defendants

further informed home health aides that failing "to correctly clock in . . . will result in not being paid for hours on that day(s)." *Id.*

Plaintiff and opt-in plaintiffs are similarly situated in that they were all employed by Defendants as home health aides, compensated on an hourly basis, and subjected to the same policies and procedures, including, most importantly, Defendants' policy of "not pay[ing] overtime" even when the home health aides worked overtime hours. For these reasons, and in the interest of judicial economy, final certification is appropriate.

## II. REQUEST FOR FINAL CERTIFICATION

This Motion seeks final certification of this collective action for Plaintiff and opt-in plaintiffs who were employed by Defendants as home health aides and who worked overtime hours for which they were not compensated at the rate of time and one-half their regular hourly rate.

### A. Collective Actions are Favored Under the Law

FLSA plaintiffs may bring an action on behalf of all "other similarly situated employees."[2] The law favors collective actions because they benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact," and providing the chance to "lower individual costs to vindicate rights by the pooling of resources."[3]

Unlike a Rule 23 class action, plaintiffs in an FLSA collective action must affirmatively opt-in to be covered by the suit.[4] If an individual employee does not opt-in by filing a written consent, he or she will not be bound by the outcome and may bring a subsequent private action.[5] Because the substantial benefits of FLSA collective actions "depend on employees receiving

---

[2] 29 U.S.C. §216(b).
[3] *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).
[4] 29 U.S.C. §216(b); *Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).
[5] *Equal Employment Opportunity Comm'n v. Pan Am World Airways, Inc*, 897 F.2d 1499, 1508 n.11 (9th Cir. 1990).

accurate and timely Notice concerning the pendency of the collective action," the FLSA grants the Court authority to manage the process of joining such employees in the action, including the power to authorize distribution of the Notice.[6] "Court authorization of Notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting a cutoff date to expedite disposition of the action."[7]

### B. The Two-Stage Certification Process

Fifth Circuit courts use a two-stage approach to the issue of certification.[8] Under this approach, once the court makes the preliminary determination that Potential Plaintiffs are similarly situated, the case proceeds as a collective action throughout discovery.[9] After conditional certification, discovery becomes relevant in regards to the merits of the case and the second step in the collective action process.[10] During the second stage, the court evaluates evidence developed through discovery to test the validity of the preliminary decision made at the Notice stage.[11]

The second stage is also called the "decertification stage" and is usually initiated by the defendants' motion for decertification.[12] At the decertification stage, the Court determines whether the plaintiffs are similarly situated – "[i]f the claimants are similarly situated, the district court

---

[6] *Hoffmann-La Roche*, 493 U.S. at 169–73 (1989) ("The broad remedial goal of the statute should be enforced to the full extent of its terms.").
[7] *Id.* at 172; *Reab v. Electronic Arts, Inc.,* 214 F.R.D. 623, 628 (D. Colo. 2002) (conditional certification for Notice purposes was appropriate where Plaintiffs had made "substantial allegations" and conditional certification would allow "significant economies" to be achieved).
[8] *See e.g. Cantu v. Milberger Landscaping, Inc*. No. SA-13-CA-731, 2014 WL 1413500 (W.D. Tex. Apr. 3, 2014) (noting that the court utilized the two-step approach to conditionally certify the class and denying defendant's motion to decertify the class).
[9] *Mooney v. Aramco Servs.*, 54 F.3d 1207, 1214 (5th Cir. 1995).
[10] *Id.*
[11] *Id.*
[12] *See* Order Adopting Report and Recommendation of the United States Magistrate Judge (Doc. 23) at 11 ("Defendants will have the opportunity under stage two of *Lusardi* to assert a motion to decertify the collective action if, after discovery, they can show that the class members are not similarly situated."); *see also Escobedo v. Dynasty Insulation, Inc.*, 2009 U.S. Dist. LEXIS 66836 at **14-15 (W.D. Tex. Jul 31, 2009).

allows the representative action to proceed to trial."[13] The "similarly situated" analysis is an "*ad hoc* analysis on a case-by-case basis" and the Court has discretion in making this determination.[14] The following factors should be considered in the decertification decision: (1) the similarity of the factual and employment histories of the claimants; (2) the similarity of "the defenses available to the employer;" and (3) "the fairness and procedural efficacy of allowing a collective action to proceed."[15]

### C. Plaintiffs Are Similarly Situated

#### 1. *Plaintiffs have similar factual and employment experiences with Defendants.*

"This first factor assesses the opt-in plaintiffs' job duties, geographic location, supervision, and salary to determine if the Plaintiffs are similarly situated."[16] All of the opt-in plaintiffs were identified by Defendants as home health aides who were formerly or currently employed by the Defendants pursuant to the Court's Order granting Plaintiffs' motion for conditional certification. *See* Docs. 20 & 23. Based on deemed admissions, the Defendants have admitted that they employed multiple home health aides as hourly employees, home health aides worked in excess of 40 hours in certain workweeks, and Defendants did not pay overtime premiums to their home health aides for overtime hours worked. *See* **Exhibit A** at Requests 7-14. Additionally, as this Court has previously noted, Defendants' Original Answer admits that "there are questions of fact and law common to the class that predominate over any questions affecting only individual members" and "these common questions 'predominate over any questions affecting only individual persons, and a collective action is superior, with respect to considerations of consistency, economy, efficiency, fairness, and equity, to other available methods for the fair and

---

[13] *Escobedo*, 2009 U.S. Dist. LEXIS 66836 at **14-15.
[14] *Id.* at *15.
[15] *Id.*
[16] *Reyes v. Tex. EZPawn, L.P.*, 2007 U.S. Dist. LEXIS 1461 at **9-10 (S.D. Tex. Jan 8, 2007).

efficient adjudication of the federal law claims.'" *See* Doc. 20 at 10; *see also* Doc. 4 at ¶¶ 39-40. Defendants further admitted that the following questions of fact and law are common to the class of home health aides: "(1) Whether Plaintiffs were covered non-exempt hourly employees; (2) Whether Plaintiffs were compensated for all hours worked; (3) Whether Plaintiffs worked more than 40 hours per week; (4) Whether Plaintiffs were compensated at 150% of their regular rate for all hours worked in excess of 40 hours in any and all weeks; (5) Whether Defendants' practices accurately account for the time Plaintiffs actually were working; (6) Whether Defendants' compensation policy and practice is illegal; and (7) Whether Defendants had a policy and practice of willfully failing to compensate employees for overtime." *Id.*

In addition to these admissions, the documents produced by Defendants to-date further establish that the plaintiffs are similarly situated. It is important to note, however, that the Defendants have failed to comply with the Court's Order (Doc. 38) granting Plaintiffs' motion to compel and have produced only incomplete documentation of the opt-in plaintiffs' time and pay records and Defendants' employment policies.

The documents produced so far, however, establish that the home health aides employed by Defendants were subject to the same employment policies whereby Defendants employed home health aides as hourly employees and explicitly stated that "REVIVAL HOME HEALTHCARE SERVICES, INC does not pay overtime" and would refuse to pay for hours worked if the home health aides failed to properly clock-in. *See* **Exhibit B**. Defendants also produced their client Service Plan, Attendant Orientation Form, General Work Rule for Attendants, and what appears to be an acknowledgment form reflecting orientation training provided to home health aides, all of which demonstrate that the home health aides had similar job duties in providing companionship services and assisting clients with activities of daily life. *See* **Exhibit C**. The policy of refusing to

pay overtime to these hourly employees when they work in excess of 40 hours per week should be sufficient to find them similarly situated and grant final certification of this collective action. "A court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances personal to the plaintiff, and not from any generally applicable rule, policy, or practice."[17]

The incomplete time and pay records produced to-date also confirm that Plaintiff and the opt-in plaintiffs were hourly employees and worked overtime hours without overtime compensation. *See* **Exhibits D-**. Ryan Kaiser worked overtime hours in almost every pay period, as reflected on his paystubs, but all hours were compensated at his regular rate. *See* **Exhibit D**. A 2015 paystub for Martha Carreon similarly shows that she worked overtime hours and the Defendants failed to pay her any overtime premium. *See* **Exhibit E**. Defendants have not produced time or payroll records for Ms. Carreon for 2016 or 2017 although records previously produced indicate that she was employed by Defendants in those years. *See* **Exhibit F**. The incomplete information related to Ms. Carreon's 2016 and 2017 earnings, however, indicates that she worked overtime hours, at a minimum, in February, March, and April 2016 and January and March 2017, assuming her hourly rate remained $10 per hour. *Id.* The August 2017 paystubs produced for Tanya Gordon show that she worked significant overtime (in excess of 100 hours per pay period) and was compensated at her regular rate for all hours reflected on the paystubs. *See* **Exhibit G**. Paystubs produced for Ana Martinez Mares similarly show overtime hours were paid at her regular rate. *See* **Exhibit H**. Paystubs produced for Ana Perez also show she worked overtime hours without overtime pay between at least October and December 2016. *See* **Exhibit I**. It is unclear,

---

[17] *Escobedo*, 2009 U.S. Dist. LEXIS 66836 at *18 (internal citations omitted).

based on the documents produced to date, whether each of the remaining opt-in plaintiffs worked overtime hours for which they were not paid during the three-year limitations period.

### 2. *The defenses available to Defendants are similar.*

The Defendants have admitted that they were aware of their obligation to pay overtime premiums for overtime hours and that they failed to do so, making this a willful FLSA violation so that the three-year statute of limitations is applicable.[18] As noted above, when the Defendants produce all relevant time and pay records for each of the opt-in plaintiffs, they may be able to establish that some of the opt-in plaintiffs' claims are time-barred. But that is an issue the Court can address at the summary judgment stage or at trial. The Court should not decertify this collective action because some opt-in plaintiffs may not have worked overtime hours during the relevant period as this "at most go[es] to the issue of recovery while Defendant's alleged FLSA violations pertain to a practice applicable to all Plaintiffs."[19] Additionally, Plaintiffs are prejudiced on this issue by Defendants' failure to comply with their discovery obligations and this Court's Orders which causes Plaintiffs to be unable to verify the overtime claims of all opt-in plaintiffs at this time.

### 3. *Proceeding as a collective action is fair and efficient.*

Courts consider across-the-board decisions to treat a discrete category of employees as not eligible for overtime as sufficient to warrant conditional certification and Notice to all those performing the same or similar work.[20] The holdings of these cases are consistent with the Supreme Court's pronouncement that Notice may be authorized under § 216(b) of the FLSA because "[t]he

---

[18] *See, e.g., Escobedo*, 2009 U.S. Dist. LEXIS 66836 at *19.
[19] *Id.* at **25-27.
[20] *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1264 (11th Cir. 2008) ("There is nothing unfair about litigating a single corporate decision [to classify employees as exempt] in a single collective action…").

judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."[21]

The FLSA's "broad remedial goal is to ensure 'maintenance of the minimum standard of living necessary for health and general well-being; and to prevent the use of interstate commerce . . . as a means of spreading and perpetuating [ ] substandard labor conditions among workers of the several states."[22] If the Defendants failed to pay overtime premiums to all of their home health aides, they "retained income which belong[s] to [their] former employees" and their violation "is best remedied by allowing Plaintiffs – some of whom may not have the resources or the sophistication to commence an action individually – to vindicate their rights as a group."[23]

Dismissing the opt-in plaintiffs would allow them to re-file their claims individually, causing the Court's docket to be unnecessarily clogged with several lawsuits relating to the Defendants' refusal to pay overtime to their home health aides. This would be extremely inefficient for the Court and the parties, causing this factor to "strongly weigh[ ] against decertification."[24]

### III. CONCLUSION

The limited evidence produced by Defendants and Defendants' admissions demonstrate that Plaintiff and opt-in plaintiffs are victims of the same scheme to deprive them of overtime compensation. As home health aides, Plaintiff and opt-in plaintiffs performed the same or similar duties and were all identified by Defendants as home health aides (or attendants). These individuals regularly worked more than 40 hours in a week during the actionable period but did not receive proper overtime compensation for hours worked due to Defendants' companywide decision not to pay home health aides overtime premiums for overtime hours worked, thereby skirting the FLSA's

---

[21] *Hoffmann-La Roche*, 493 U.S. at 170.
[22] *Escobedo*, 2009 U.S. Dist. LEXIS 66836 at *29 (quoting *U.S. v. Darby*, 312 U.S. 100, 109-110 (1941)).
[23] *Id.*
[24] *Id.* at *31.

overtime provisions. The evidence shows that the Plaintiff and opt-in plaintiffs were victimized by the same improper practice that required overtime work without overtime pay. In these circumstances, a collective action is superior in terms of fairness and judicial economy to forcing each of the plaintiffs to bring separate actions. Plaintiffs, therefore, ask the Court to grant final certification of this collective action.

Respectfully Submitted:

By: */s/ Corinna Chandler*
Corinna Chandler
Texas Bar No. 24061272
Chandler Law, P.C.
3419 Westminster #343G
Dallas, Texas 75205
972-342-8793
972-692-5220 (fax)
chandler@chandlerlawpc.com

ATTORNEY FOR PLAINTIFFS

## **CERTIFICATE OF CONFERENCE**

I hereby certify that Plaintiffs' counsel attempted to meet and confer with Defendants' counsel, sending emails and placing telephone calls to Defendants' counsel numerous times on February 6, 2020. Defendants' counsel failed to respond to both emails. Staff at Defendants' counsel's office indicated, in two separate telephone calls, that they or Mr. Cramer would respond to Plaintiffs' counsel before the end of the day but failed to do so. As a result, Plaintiffs' counsel is unsure whether Defendants oppose this motion but notes that as of the filing of this motion Defendants have not filed a Motion for Decertification.

*/s/ Corinna Chandler*
Corinna Chandler

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served or caused the foregoing to be served on all counsel of record via the Court's CM/ECF system on this 6th day of February 2020.

*/s/ Corinna Chandler*
Corinna Chandler