# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| RYAN KAISER, on behalf of himself and others similarly-situated, | § § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO. 4:18-cv-00341 |
| v. | § § | Judge Mazzant/Magistrate Judge Craven |
| REVIVAL HOME HEALTHCARE SERVICES, INC. and SYLVESTER C. UDEZE, | § § § § | |
| *Defendants* | § § | |

### ORDER REGARDING SECOND STAGE MOTION FOR FINAL CERTIFICATION

Before the Court is the following pending motion:

**Plaintiff's Second Stage Motion for Final Certification (Dkt. #40).**

The Court, having considered the motion and noting no response has been filed in opposition to the motion, is of the opinion the motion should be **DENIED** at this time.

### FACTUAL BACKGROUND

Plaintiff Ryan Kaiser, individually and on behalf of all others similarly situated, filed this collective action against Revival Home Healthcare Services, Inc. and Sylvester C. Udeze ("Defendants") for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et. seq*. Plaintiff and potential opt-in plaintiffs are current and former home health aides employed by Defendants. Plaintiff alleges Plaintiff and potential opt-in plaintiffs were (1) compensated on an hourly basis for on-the-clock hours worked, (2) required to work in excess of 40 hours in certain workweeks between September 1, 2015, and the present, and (3) not paid overtime premiums for on-the-clock overtime hours worked.

Plaintiff's Original Collective Action Complaint alleges Plaintiff and other similarly situated individuals were not paid overtime premiums for their overtime hours worked. *See* Dkt. # 1 at ¶¶ 1-2, 17-31. According to the complaint, Plaintiff is "one of a number of home health aides who are or were formerly employed by Defendants and whose compensation was improper under the FLSA because Defendants failed and refused to compensate Plaintiffs for their overtime hours worked as required by the FLSA." *Id.*, ¶ 2. Plaintiff alleges he was employed by Defendants as a home health aide, providing companionship services, from February 2016 to November 2017, and he regularly worked more than forty hours a week during that time. *Id.*, ¶ 4.

Plaintiff alleges the "precise size and the identity of the Putative Class Members should be ascertainable from the business records, tax records and/or employee or personnel records of Defendants." *Id.*, ¶ 7. Under the "Collective Action Allegations" section of the complaint, Plaintiff alleges the "number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from the records of Defendants, and potential class members may be easily and quickly notified of the pendency of this action. These employees are victims of Defendants' unlawful compensation practices and are similarly situated to Plaintiff in terms of job duties, pay, and employment practices." *Id.*, ¶ 36.

Plaintiff alleges Defendants' failure to pay overtime compensation as required by the FLSA results from a generally applicable, systematic policy and practice and is not dependent on the personal circumstances of any individual employee. *Id.*, ¶ 38. Thus, according to the complaint, Plaintiff and the other home health aides are similarly situated employees. *Id.* Plaintiff alleges the specific job titles or precise job requirements of the similarly situated employees do not prevent collective treatment; all employees, regardless of their precise job requirements or rates of pay, are entitled to be properly compensated for all hours worked in excess of forty hours per week at the

overtime rate; and, although the issue of damages may be individual in character, "there is no detraction from the common nucleus of liability facts." *Id.*

According to Plaintiff, there are questions of fact and law common to the class that predominate over any questions affecting only individual members. *Id.*, ¶ 39. The questions of fact and law common to the class arising from Defendants' actions include, without limitation, the following: (1) Whether Plaintiffs were covered non-exempt hourly employees; (2) Whether Plaintiffs were compensated for all hours worked; (3) Whether Plaintiffs worked more than 40 hours per week; (4) Whether Plaintiffs were compensated at 150% of their regular rate for all hours worked in excess of 40 hours in any and all weeks; (5) Whether Defendants' practices accurately account for the time Plaintiffs actually were working; (6) Whether Defendants' compensation policy and practice is illegal; and (7) Whether Defendants had a policy and practice of willfully failing to compensate employees for overtime. *Id*.

Plaintiff alleges these common questions "predominate over any questions affecting only individual persons, and a collective action is superior, with respect to considerations of consistency, economy, efficiency, fairness, and equity, to other available methods for the fair and efficient adjudication of the federal law claims." *Id.*, ¶ 40. Plaintiff further alleges his claims are "typical of those of the similarly situated employees in that these employees have been employed in the same or similar positions as the Collective Action Representative and were subject to the same or similar unlawful practices as the Collective Action Representative and reported to the same managers." *Id.*, ¶ 41.

According to Plaintiff, a collective action is the appropriate method for the fair and efficient adjudication of this controversy because the presentation of separate actions by individual similarly situated current or former employees could create a risk of inconsistent and varying

adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of collective action members to protect their interests. *Id.*, ¶ 42. In addition, Plaintiff alleges the maintenance of separate actions would place a substantial and unnecessary burden on the court and could result in inconsistent adjudications, whereas a single collective action can determine, with judicial economy, the rights of all collective action members. *Id.*, ¶ 43.

## **PROCEDURAL BACKGROUND**

The case has an extensive history. On September 28, 2018, Plaintiff served his First Set of Requests for Admission. Defendants' response was due on October 29, 2018, but no response was provided. Receiving no timely response to the Requests for Admission, on November 2, 2018, Plaintiff filed his First Stage Motion for Notice to Potential Plaintiffs & Conditional Certification, relying solely on the deemed admissions. Dkt. # 11. Plaintiff's motion sought conditional certification of, and supervised notice to, home health aides who worked for Defendants over the last three years and who worked overtime hours for which they were not compensated at the rate of time and one-half their regular hourly rate.

Defendants filed a motion to withdraw admissions on November 15, 2018. Dkt. # 12. On January 2, 2019, the Court denied Defendants' motion, finding the unanswered admissions were deemed admitted. Dkt. # 17. The Magistrate Judge held a hearing on Plaintiff's motion for notice and conditional certification and on March 12, 2019, entered a Report and Recommendation, recommending Plaintiff's motion for notice to potential plaintiffs and conditional certification be granted. Dkt. # 20.

On April 22, 2019, the undersigned overruled Defendants' objections to the Report and Recommendation and granted Plaintiff's First Stage Motion for Notice to Potential Plaintiffs and

Conditional Certification. Dkt. # 23. The Court approved Plaintiff's proposed Notice and Consent Forms. *Id*. at pp. 11-12. On July 22, 2019, Plaintiff filed a Notice of Consent to Become Party Plaintiff on behalf of eleven opt-in plaintiffs. Dkt. # 28.

Plaintiff filed his first motion to compel on March 5, 2019, before the Court granted conditional certification, asserting Defendants' initial disclosures did not contain any relevant payroll information. According to Plaintiff's first motion to compel, on September 28, 2018, Plaintiff's counsel had served Plaintiff's Requests for Admission and First Request for Production on Defendants. The parties conferred on February 7, 2019, and Defendants served their response the same day, indicating "[a]ll responsive documents [were] attached, if any exist." Plaintiff asserted the only documents Defendants produced were "plaintiff's annual earnings report and forms indicating that plaintiff (and some other employees) picked up their paychecks." Dkt. # 19 at p. 2. In the first motion to compel, Plaintiff requested the Court order Defendants to produce all responsive documents, including time keeping and payroll records for Plaintiff.

Defendant did not file a response within the time prescribed by the Local Rules of this Court. Therefore, the Court ordered Defendants to file a response. Dkt. # 22. In their April 25, 2019 response to Plaintiff's first motion to compel, Defendants represented as follows:

> Defendants have complied and have provided Plaintiff with all responsive documents they have located. Defendants have turned over all documents in their possession, custody or control. Defendants are not withholding any privilege[d] documents.

Dkt. # 24 at p. 1. No further briefing was filed. On June 18, 2019, the Court denied Plaintiff's first motion to compel, noting Defendants had represented they had produced all responsive, non-privileged documents in their possession, custody, or control.

Following the July 22 notice of consent regarding eleven opt-in plaintiffs, Plaintiff filed his second motion to compel on October 4, 2019. According to Plaintiff, the July 22 notice should

5

have prompted Defendants to produce relevant documents concerning the hours worked by and compensation paid to those opt-in plaintiffs, along with other relevant documents, however Defendants failed to do so. Dkt. # 30 at p. 2. In light of Defendants' "repeated and pervasive failure to comply with their discovery obligations in this case, Plaintiffs served a Second Request for Production on Defendants on August 1, 2019, requesting many of the same documents previously requested and clarifying that Plaintiffs' requests seek time and pay records for all opt-in plaintiffs." *Id.*

After Defendants again failed to timely respond, the Court ordered them to file a response on or before November 12, 2019. Dkt. # 34. On November 12, 2019, Defendants filed a one-paragraph response to Plaintiff's second motion to compel. The response was almost identical to Defendants' response to Plaintiff's first motion to compel, claiming they had produced "all documents in their possession, custody or control" responsive to the request for production served on them on September 28, 2018. Dkt. # 35.

On January 17, 2020, the Court granted Plaintiff's second motion to compel. Dkt. # 38. Specifically, the Court ordered as follows:

> [T]he Court orders Defendants to produce to Plaintiff, within fourteen days from the date of entry of this Order, the following information for the opt-in plaintiffs: (1) paystubs for their employees; (2) the EVV Visit Log Defendants are legally obligated to maintain for each of their home health aides; (3) a separate report containing the clock in and out times for the opt-in plaintiffs; and (4) relevant documents related to the job description, job duties, employment agreements, and training of each opt-in plaintiff.

*Id.* at pp. 11, 13. The Court further ordered that Defendants shall pay Plaintiff's reasonable attorney's fees in bringing the second motion to compel within seven days of being advised of the amount of the fees by Plaintiff. *Id.* at p. 13.

On February 6, 2020, Plaintiffs filed their current Second Stage Motion for Final

Certification. Dkt. # 40. Two days before Plaintiffs filed their Second Stage Motion for Final Certification, Defendants' counsel from the beginning of this case, Michael R. Cramer, filed a Motion to Withdraw as Counsel. Dkt. # 39. The Magistrate Judge set Mr. Cramer's motion for hearing March 9, 2020, but later rescheduled the hearing for March 17 at the request of Mr. Cramer. Dkt. # 47. Due to potential limitations on travel because of COVID-19, the Magistrate Judge cancelled the March 17 hearing and amended the scheduling order to accommodate postponing the hearing. Dkt. #s 49, 51. The Third Amended Scheduling Order set Mr. Cramer's motion to withdraw as counsel for hearing May 13, 2020 and extended Defendants' deadline to respond to Plaintiffs' Second Stage Motion for Final Certification until July 9, 2020. Dkt. # 51 at p. 2.

After conducting a video hearing on Mr. Cramer's motion to withdraw as counsel, the Magistrate Judge denied Mr. Cramer's motion without prejudice on May 13, 2020. Dkt. # 53 at pp. 11-12 (noting the Court's concern that no other counsel had appeared as substitute counsel for Defendant Revival Home Healthcare Services, Inc. and further stating there were also the outstanding issues of payroll document production and payment of Plaintiff's reasonable attorney's fees in bringing the second motion to compel). The Magistrate Judge stated Mr. Cramer could refile his motion to withdraw as counsel for Defendants in the event certain conditions are met, including either Defendants' or Mr. Cramer's payment of $5,000.00 to Chandler Law, P.C. and the completion of production of any outstanding payroll document production. *Id.* at pp. 12-13. Defendants were allowed thirty days in order to retain new counsel and were ordered to notify the Court if they had secured new counsel by June 15, 2020. The Magistrate Judge noted in a footnote that if any substituted counsel might need additional time in which to file a response to

Plaintiffs' Second Stage Motion for Final Certification, the Court would entertain a motion requesting a reasonable extension of time in which to do so. *Id.* at p. 13, n. 3.

On May 26, 2020, Ewomazino Magbegor filed an Appearance of Counsel for Defendants. Dkt. # 55. On June 14, 2020, Defendants filed their Notice of New Counsel, substituting Mr. Magbegor as counsel of record in place of Mr. Cramer.[1] Dkt. # 56. On July 8, the day before the deadline for Defendants to respond to Plaintiffs' Second Stage Motion for Final Certification, current counsel filed a motion for an extension of time until July 27, 2020 to file Defendants' response. Dkt. # 57.

The Court granted the extension and further advised that no further extensions of time would be entertained. Dkt. # 58. As of this date, no response has been filed.

The Third Amended Scheduling Order provides a discovery deadline of December 16, 2019. Dkt. # 51 at p. 2. The deadline for Defendants to file a motion to decertify and for Plaintiffs to file a motion for final certification was February 6, 2020. *Id.* The dispositive motions deadline is September 17, 2020. *Id.* Considering the length of time the current motion has been pending with no response, and further considering the fast-approaching dispositive motions deadline, the undersigned, rather than the Magistrate Judge, is entering an order on Plaintiffs' Second Stage Motion for Final Certification.

## **LEGAL STANDARDS**

### *The FLSA*

The FLSA requires covered employers to pay nonexempt employees overtime rates for time worked in excess of statutorily-defined hour limits. *Greinstein v. Granite Servs. Int'l, Inc.*, No. 2:18-CV-208-Z-BR, 2019 WL 6330631, at *2 (N.D. Tex. Aug. 27, 2019), *report and*

---

[1] As of this date, Mr. Cramer has not refiled his motion to withdraw as counsel.

8

*recommendation adopted*, No. 2:18-CV-208-Z-BR, 2019 WL 6330123 (N.D. Tex. Nov. 26, 2019) (citing *Velazquez v. El Pollo Regio IP, LLC*, No. 3:15-CV-03170-M, 2016 WL 3669876, at *2 (N.D. Tex. July 11, 2016) (Lynn, J.) (citing 29 U.S.C. § 207(a))). Employers who violate this overtime compensation requirement may be sued in a collective action by "any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). A collective action is similar to a class action brought under Rule 23 of the Federal Rules of Civil Procedure, but in an FLSA "collective action" the other employees do not become plaintiffs in the action unless and until they consent in writing or "opt-in" to the lawsuit. *Greinstein*, 2019 WL 6330631, at *2 (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008); also citing *Villatoro v. Kim Son Restaurant, L.P.*, 286 F. Supp. 2d 807, 809 (S.D. Tex. 2003) (an action brought under the FLSA follows an "opt-in" rather than the "opt-out" procedure under Rule 23 class action suits)).

FLSA collective actions operate on an "opt-in" basis in which potential class members must give affirmative notice of their consent to join the suit. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). One stated purpose of the collective action is to allow plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffman–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

***Two-stage approach to determining whether to certify a collective action***

District courts have the discretionary power to conditionally certify a collective action and to authorize the sending of notice to potential class members pursuant to §216(b), but certification is not mandatory. *Id.* at 169. Although the Fifth Circuit Court of Appeals has expressly refused to endorse a specific method for determining whether a collective action should be conditionally

certified under 29 U.S.C. § 216(b), the majority of the courts within the Fifth Circuit have adopted the two-stage approach found in *Lusardi vs. Xerox, Corp.*, 118 F.R.D. 351 (D. N.J. 1987). *See Mooney*, 54 F.3d at 1212 (noting acceptable approaches include either the *Lusardi* approach or the "spurious class action" approach).[1]

**Stage one**

"In the notice stage, the court makes a decision, based on the pleadings and affidavits, on whether notice of the action should be given to putative class members. This decision typically results in 'conditional certification' of a representative class." *Allen v. McWane, Inc.,* 2006 WL 3246531, at *2 (E.D. Tex. Nov.7, 2006). The plaintiff bears the burden at the notice stage, and the plaintiff must provide competent evidence to show that a similarly situated group of potential plaintiffs exists. *Casanova v. Gold's Texas Holdings Group, Inc*., 2014 WL 6606573, *2 (W.D. Tex. November 19, 2014). "At the notice stage, 'the [similarly situated] standard requires nothing more than substantial allegations that the putative class members were victims of a single decision, policy, or plan." *Gallender v. Empire Fire and Marine Ins. Co.*, 2007 WL 325792, at *1 (S.D. Miss. Jan.31, 2007) (unreported) (quoting *Allen,* 2006 WL 3246531, at *2).

"Specifically, the first-stage test requires a minimal showing by the plaintiff that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit." *Casanova,* 2014 WL 6606573, at *2 (quoting *Walker v. Honghua Am., L.L.C.,* 870 F.Supp.2d 462, 465–66 (S.D.Tex.2012) (internal citations and quotation marks omitted in *Casanova*)). "As the court's

---

[1] In *Mooney*, the Fifth Circuit found it unnecessary to choose between the tests because it was apparent from the record that, no matter which methodology was utilized, the Fifth Circuit could not say the district court abused its discretion in finding the "opt-in" plaintiffs were not similarly situated. *Mooney*, 54 F.3d at 1216.

decision is usually based only on the pleadings and affidavits, the standard is lenient and typically results in conditional certification." *Id.* During the notice stage, "courts do not review the underlying merits of the action in determining whether to conditionally certify." *Id.*

However, conditional certification is not automatic. *Casanova,* 2014 WL 6606573, at *2 (citation omitted). "If the plaintiffs cannot show that the . . . "putative class members were together the victims of a single decision, policy, or plan' that violates the FLSA, the court should not conditionally certify the class." *Id.* (quoting *Mooney*, 54 F.3d at 1214, n. 8). "If the court finds the potential plaintiffs to be similarly situated, the court should conditionally certify the class, provide notice to potential class members, allow time for the putative class members to opt-in, and allow adequate time for discovery." *Gallender,* 2007 WL 325792, at *1 (citing *Mooney*, 54 F.3d at 1213-14).

**Stage two**

The second stage of the two-step approach found in *Lusardi* is "typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Mooney*, 54 F.3d at 1214. The scrutiny applied in the second stage is much more rigorous than that of the notice stage. *Gallender*, 2007 WL 325792, at *2. If the claimants are similarly situated, the district court allows the representative action to proceed to trial, but if the claimants are not similarly situated, "the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice." *Mooney*, 54 F.3d at 1214. The original plaintiffs then proceed to trial on their individual claims. *Id.*

To determine whether there is sufficient similarity, courts consider three relevant factors:

"(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Roussell v. Brinker Int'l, Inc.*, 441 Fed. Appx. 222, 226 (5th Cir. 2011) (unpublished) (quoting *Mooney*, 54 F.3d at 1213 n.7); *see also Lipnicki v. Meritage Homes Corp.*, 2014 WL 5620603, at *2 (S.D. Tex. Nov. 4, 2014) (Costa, J.). These factors touch on the ultimate question, which is "whether the named plaintiffs are substantially similar to the opt-in plaintiffs." *Kelly v. Healthcare Servs. Grp., Inc.*, 106 F. Supp. 3d 808, 813 (E.D. Tex. 2015) (citing *Clark v. Centene Co of Tex., L.P.*, 44 F. Supp. 2d 674, 688 (W.D. Tex. 2014) (Sparks, J.)). As Judge Costa has pointed out, however, the "first and second certification factors—the disparate factual and employment settings of the individual plaintiffs and the various individualized defenses available to the defendants—[] largely merge into one inquiry because the disparate factual and employment settings are relevant to whether the common" defenses can be tried collectively. *Id.* (quoting *Lipnicki*, 2014 WL 5620603, at *2). Thus, there is substantial overlap between factors (1) and (2). *Id.*

## DISCUSSION

Applying the *Lusardi* two-stage certification process for collective actions, the Court conditionally certified the class on April 22, 2019. Dkt. # 23. This resulted in notice being provided to potential plaintiffs who could then choose to opt-in. When the Court certified the class, the order specifically stated that Defendants would "have the opportunity under stage two of *Lusardi* to assert a motion to decertify the collective action if, after discovery, they can show that the class members are not similarly situated. . . ." Dkt. # 23 at p. 11.

The original scheduling order in this case did not include a deadline for Defendants to file a motion to decertify. *See* Dkt. # 9. Following the referral of the case to the Magistrate Judge for

pretrial purposes and the Court's order conditionally certifying the class, the parties filed a Joint Motion to Amend Scheduling Order, but the proposal did not include any deadline for a decertification motion. *See* Dkt. # 25. The Magistrate Judge granted the parties' motion and entered the Amended Scheduling Order as requested by the parties. Dkt. # 26. However, in the November 4, 2019 Second Amended Scheduling Order, the Magistrate Judge *sua sponte* included the February 6, 2020 deadline for the filing of any motions regarding decertification/certification of this FLSA collective action. Dkt. # 33. At that time, the dispositive motions deadline was February 20, 2020.[2]

Defendants did not file a motion to decertify the FLSA class by the February 6, 2020 deadline for decertification. However, as provided for in the Second Amended Scheduling Order, Plaintiffs timely filed the current motion for final certification. In their motion, Plaintiffs seeks final certification of this collective action for Plaintiff and opt-in plaintiffs who were employed by Defendants as home health aides and who worked overtime hours for which they were not compensated at the rate of time and one-half their regular hourly rate. Dkt. # 40 at p. 3.

For several reasons, the Court is of the opinion Plaintiffs' motion should be denied at this time. First, although in the Second Amended Scheduling Order the dispositive motions deadline was in February (along with the deadline for the filing of any motions regarding decertification/certification), the dispositive motions deadline was later continued in the Third Amended Scheduling Order to September 17, 2020. Dkt. # 51. As noted above, the Court ordinarily

---

[2] Ordinarily, the Court's scheduling order for FLSA cases contains only a deadline for defendant to file a decertification motion on the same date as the dispositive motions deadline. However, the Court notes the First Amended Class Certification Scheduling Order entered in a recent FLSA case before the Court contained a deadline for the filing of both a decertification motion by the defendant and a final certification motion by the plaintiffs. *Cunningham v. Kitchen Collection, L.L.C.,* Cause No. 4:17-CV-770-ALM-KPJ (Dkt. # 70). Even in *Cunningham*, however, the deadline for defendant to file a decertification motion and for plaintiffs to file a final certification motion was the same date as the deadline for the filing of dispositive motions. *Id.*

provides a deadline for defendant to file a decertification motion on the same date as the dispositive motions deadline. Considering there is still one month until the dispositive motions deadline, the Court finds the issue is premature.

Even more importantly, the Court is not convinced Defendants have had sufficient opportunity in which to address this issue. On February 4, 2020, two days before Plaintiffs filed their current motion, Defendants' counsel of record since at least June 5, 2018 filed a motion to withdraw as attorney. Dkt. # 39. In their response in opposition to Mr. Cramer's motion to withdraw, Plaintiffs noted Mr. Cramer had refused to cooperate regarding scheduling mediation because Mr. Cramer had filed the motion to withdraw. *See* Dkt. # 41 & Ex. A attached thereto.

Because of unexpected issues related to the COVID-19 pandemic, the Magistrate Judge was not able to conduct a hearing on the motion to withdraw until mid-May 2020. After conducting the hearing via video conference on May 13, the Magistrate Judge entered an order that same day denying Mr. Cramer's motion without prejudice to refiling. Dkt. # 53. In her order, the Magistrate Judge specifically advised Mr. Cramer of his continuing duty to Defendants until his motion to withdraw has been granted. *Id.* at p. 14. However, in the time between February 4, 2020 when Mr. Cramer filed his motion and the Magistrate Judge's advising Mr. Cramer of his continuing duty to Defendants, the decertification motion deadline passed. It appears Mr. Cramer was not fulfilling his continuing duty to Defendants during that time.[3] Although Defendants have new counsel, the decertification motion deadline had long passed by the time new counsel made an appearance in late May. Even though the Magistrate Judge allowed new counsel additional time in which to

---

[3] This is bolstered by Mr. Cramer's conduct in this case prior to filing his motion to withdraw. As stated by Plaintiffs in their response to Mr. Cramer's motion to withdraw, due to Defendants' failure and refusal to comply with discovery obligations, Plaintiff's Motion for Conditional Certification relied entirely on deemed admissions. Dkt. # 41 at p. 1. Plaintiffs further pointed out that Defendants subsequently refused to produce documents and even failed to timely respond to each of the motions to compel, prompting the Court to enter orders, *sua sponte*, extending the response deadlines and ordering Defendants to file their responses by the extended deadlines. *Id.* at pp. 1-2.

respond to Plaintiffs' motion for final certification, which counsel has failed to do, the Court is still not convinced it should address "final" certification, especially at this time.

Even though Plaintiffs filed their current motion as required by the November 4, 2019 Second Amended Scheduling Order, the "second stage, known as the certification stage, is triggered when the **defendant files a motion for decertification** after discovery is largely complete." *Sanders v. Latshaw Drilling Co., L.L.C.*, No. 3:16-CV-1093-S, 2019 WL 1209769, at *2 (N.D. Tex. Mar. 14, 2019) (citing *Gomez v. Mi Cocina Ltd.*, Civ. A. No. 3:14-CV-2934-L, 2017 WL 3334106, at *3 (N.D. Tex. Aug. 4, 2017)) (emphasis added). Following the entry of the Second Amended Scheduling Order in this case, a court in the Fifth Circuit explained that if a court, such as that one, used the two-step certification process used in this case, "the conditional certification *is* certification, and '[a] decertification decision would be a *revision* of the original order.'" *Smith v. Metro Sec., Inc.*, No. CV 18-953, 2019 WL 6701311, at *7 (E.D. La. Dec. 9, 2019) (quoting *Baldridge v. SBC Comm., Inc.*, 404 F.3d 930, 931 n. 3 (5th Cir. 2005) (emphasis in original); also citing *In re Wells Fargo Wage & Hour Employ. Pracs. Lit. (No. III)*, 18 F. Supp. 3d 844, 853 (S.D. Tex. 2014) (explaining that the Fifth Circuit does not require final certification to approve a FLSA collective action settlement)).[4] In *Smith*, the court certified the collective action and the opt-in plaintiffs provided their written consents. *Smith*, 2019 WL 6701311, at *7. The

---

[4] Although district courts outside of the Fifth Circuit may require "final" certification prior to approving an FLSA collective action settlement, courts in the Fifth Circuit have not imposed such a requirement. *In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III)*, 18 F. Supp. 3d 844, 853 (S.D. Tex. 2014). In the *Wells Fargo* case, the court noted that while "there is a second stage in FLSA collective action cases during which the court may *decertify* the class if the plaintiffs are not similarly situated in light of information gathered during post-certification discovery, there was no need to reach the decertification stage here since the parties settled the case." *Id.* (emphasis in original). In a case within this district, the district judge similarly stated "[f]inal" certification of a collective action is not necessary prior to approval of a FLSA settlement. *Vassallo v. Goodman Networks, Inc.*, No. 15CV97-LG-CMC, 2016 WL 6037847, at *1 n. 1 (E.D. Tex. Oct. 14, 2016) (citing *In re Wells Fargo*, 18 F. Supp. 3d at 853).

defendants never filed a motion to decertify, which the court had "clearly noted in the conditional certification order was up to them." *Id.*

After the case proceeded to trial and the jury returned a verdict in favor of the plaintiffs, the defendants argued in a post-trial motion that because the court "merely conditionally certified the collective, and never issued a final certification, the opt-in plaintiffs' claims should be dismissed without prejudice to their rights to bring individual claims." *Id.* at *2. The court declined the defendants' belated request to dismiss the plaintiffs' claims as a collective action, noting that "by Plaintiffs' *action*, Smith's individual suit became a conditionally-certified collective suit; by Defendants' *inaction*, conditional certification became final certification – which certainly occurred once the jury and the Court were called upon to address the merits (*Big Lots*) and a final judgment entered (*Baldridge*)." *Id.* at *7 (emphasis in original).

Similarly here, by Plaintiffs' actions thus far, this case has been conditionally certified as a collective suit. To the extent Defendants' new counsel, after given sufficient time, fails to move for decertification, the conditional certification will become final certification. However, the Court finds Defendants should have the opportunity during this second stage of *Lusardi* to move to "decertify" the collective action if, by the current dispositive motions deadline, they can show that the class members are not similarly situated. *See Ramirez v. Load Trail, L.L.C.*, 333 F.R.D. 89, 94 (E.D. Tex. 2019).

Based on the foregoing, it is

**ORDERED** that Plaintiffs' Second Stage Motion for Final Certification (Dkt. # 40) is **DENIED** at this time. It is further

**ORDERED** that the Third Amended Scheduling Order (Dkt. # 51) is hereby amended to reflect that the deadline for Defendants' new counsel to file a motion to decertify the FLSA

collective action is extended to **September 17, 2020**, the deadline for motions to dismiss, motions for summary judgment, or other dispositive motions. It is further

**ORDERED** that even though the mediation deadline is not until November 13, **the parties shall mediate this case on or before the September 17, 2020 deadline for motions to dismiss, motions for summary judgment, motion to decertify, or other dispositive motions**. Plaintiffs' counsel shall notify the Court upon completion of mediation.

**IT IS SO ORDERED.**

**SIGNED this 18th day of August, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE